COMMONWEALTH vs. MARK E. QUIGLEY.

Bristol.  December 8, 1983. — March 14, 1984.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Homicide.  Evidence,* Admissions and confessions.  *Practice, Criminal,*
Argument by prosecutor, Instructions to jury.

At the hearing on a motion to suppress an inculpatory statement made by a
criminal defendant to police, there was sufficient evidence to warrant
the judge's conclusion that, prior to making the statement, the defendant
had been given Miranda warnings, understood them, and waived his
rights voluntarily and intelligently.  [463-464]
Certain allegedly intemperate remarks made by a prosecutor in closing argu-
ment did not require reversal of a conviction of murder.  [464]
At the trial of a murder case, the judge did not err in his instructions to the
jury on malice aforethought by stating that they might infer malice from
the severe beating which the defendant gave the victim and which
amounted to assault and battery by means of a dangerous weapon.
[465-467]

INDICTMENT found and returned in the Superior Court De-
partment on March 19, 1980.

The case was tried before *Taveira, J.*, and a motion for a
new trial was heard by him.

The Supreme Judicial Court granted a request for direct
appellate review.

*Peter G. DeGelleke* for the defendant.

*Stephen R. Kaplan,* Special Assistant District Attorney (*Phil-
lip L. Weiner,* Assistant District Attorney, with him) for the
Commonwealth.

NOLAN, J.  The defendant, Mark E. Quigley, was indicted
for the murder of Lawrence W. Tremblay, who died as a result
of an incident on March 7, 1980.  After a trial by jury, he was
found guilty of murder in the second degree on November 24,
1980.  His appeal was entered in the Appeals Court.  A motion

for new trial was filed on June 4, 1982, and was heard on September 7, 1982, and on November 15, 1982. The motion was denied with a memorandum of decision filed on November 23, 1982. The defendant's motion to consolidate his direct appeal from the denial of the motion for new trial was allowed. We granted the defendant's application for direct appellate review.

The defendant claims to be aggrieved by the following errors: (1) the denial of his motion to suppress an inculpatory statement; (2) an intemperate final argument by the prosecutor; and (3) misapplication of the felony-murder rule in the judge's charge, and its effect on the Commonwealth's burden of proof of malice.

The jury could have found that at or about 1 P. M. on March 7, 1980, the defendant went to a bar in Taunton with Robert Jones and Gerry Shaw. The victim was at the bar. After playing pool for a while, the defendant, the victim, Jones, and Shaw went to Middleboro in the defendant's motor vehicle where they picked up Lisa Burrell, Jones' girl friend. On the return trip to Taunton, they stopped at a package store where the victim bought some beer. All the men had been drinking except Jones. The victim and Shaw, who were in the back seat, started to quarrel about a woman to whom both had become attentive. In an area of Taunton known for its strawberry fields, the defendant stopped the automobile after learning that the victim had vomited on the rear seat. He was angry and threatened reprisal, but at the moment the defendant was more concerned about a defect under the hood of his automobile. While he and Jones examined the engine, the victim and Shaw had a fist fight at the rear of the automobile. The victim was knocked to the ground. The defendant went to the rear of the automobile, picked up the victim and hit him in the head. As the victim lay on the ground, the defendant kicked him in the temple and cheekbone, then dropped to his knees and delivered approximately a dozen blows to the victim's head. Shaw and Jones finally persuaded him to stop. To keep the interior of the automobile from becoming any more soiled (the victim was covered with blood), they dumped the victim, who was then mumbling, in the trunk. He moaned intermittently while the defendant drove the others

to his apartment. The volume of the automobile radio drowned out the victim's moans. After driving into Taunton to a friend's apartment, they went to St. Joseph's Cemetery in Raynham and carried the victim to a place near a gravestone. He was still alive. Before leaving the cemetery, the defendant decided to take whatever money the victim had and returned to the victim, took his wallet, removed the money, put the wallet back in the victim's pocket, and kicked the victim a few times. They drove to the defendant's apartment. It was then about 4 P.M. They ate supper and had a party.

On the following morning, March 8, 1980, at approximately 7:45 A.M., the Raynham police received a telephone call about a body at St. Joseph's cemetery. The police went to the cemetery and on finding the wallet which contained the victim's driver's license, among other things, identified the body. As a result of their investigation, the police arrested the defendant later in the morning.

There was evidence from the testimony of the pathologist that the victim might have survived the multiple beatings and kickings if he had been given medical attention instead of being abandoned in the cemetery.

1. *Motion to suppress.* At the suppression hearing, the police officers who drove the defendant to the police station and interrogated him testified, as did the defendant and his father, who came to the police station and remained there during the interrogation. In his findings, the judge noted that the "credibility of the various witnesses seems to be a critical issue for my determination." It follows inescapably from his denial of the defendant's motion to suppress that he believed the officer who testified that the defendant was given Miranda warnings, understood them, and waived them voluntarily and intelligently, thereafter giving an inculpatory statement. See *Commonwealth* v. *Correia,* 381 Mass. 65, 76 (1980). In the absence of subsidiary findings on the issue of credibility, we assume that the judge's determination was adverse to the losing party (in this case the defendant). The judge's ultimate conclusion, however, may be reviewed because it involves the correctness of the application of constitutional principles to the facts. See *Commonwealth* v. *Moon,* 380 Mass. 751, 756 (1980),

quoting *Commonwealth* v. *Murphy,* 362 Mass. 542, 550-551 (Hennessey, J., concurring). See *Commonwealth* v. *Haas,* 373 Mass. 545, 550 (1977). There was no error in the denial of the defendant's motion to suppress.

2. *Prosecutor's closing argument.* The defendant complains (timely objections were made) that the prosecutor violated the Code of Professional Responsibility, S.J.C. rule 3:07, DR 7-106 (C) (4), as appearing in 382 Mass. 787 (1981), which prohibits a lawyer from asserting "his personal opinion . . . as to the guilt or innocence of an accused." The assistant district attorney stopped short of expressing his opinion. He suggested to the jury that he had met his burden of proof by producing sufficient evidence of guilt beyond a reasonable doubt. This approach is within permissible bounds. Though his rhetoric may have been self-serving, it was not reversible error. See *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 271-274 (1982).

The defendant's second argument concerns the prosecutor's appeal to the jury's emotions and prejudices. As an example, the prosecutor pointed out the grim irony of the victim's final resting place, St. Joseph's Cemetery, the same place in which he was kicked, robbed, and finally died. We have repeatedly warned against emotional appeals and argument designed to excite the jury's prejudice. See *Commonwealth* v. *Shelley,* 374 Mass. 466, 470-471 (1978). However, the argument was not impermissibly emotional and it was based entirely on the evidence.

Finally, the defendant suggests that there was error in permitting the prosecutor to demonstrate how the defendant knelt down to beat the victim, but the record does *not* reflect the demonstration. Though we do not wish to encourage such histrionics (better left to the stage), we see no reversible error because the judge clearly and firmly instructed the jury to return a verdict based only on the evidence. He warned in detail and with specificity that what the attorneys said or did or what he said about the testimony was not evidence. See *Commonwealth* v. *Atkins,* 386 Mass. 593, 606 (1982).

3. *Judge's instruction on malice and felony-murder.* The judge instructed the jury on those forms of murder in the first degree which require proof of deliberately premeditated malice aforethought and extreme atrocity. He also instructed them on the elements of murder in the second degree, of manslaughter, and of assault and battery. The defendant filed no requests for instructions and at the close of the charge he objected only to portions which are not here material. There were no objections to those parts of the charge relevant to the issues raised on appeal, but the defendant argued and the judge treated the claims of error in the charge in his memorandum of decision on the motion for new trial. See *Commonwealth* v. *Gagne,* 367 Mass. 519, 526 (1975).

Before the trial was underway, the prosecutor made it clear that he was not relying on felony-murder as the basis for the first degree murder prosecution. The judge deliberately withdrew from the jury's consideration first degree murder under the felony-murder doctrine. He did refer to the felony-murder rule in explicating the requirement of malice as an element in second degree murder. He correctly charged that the jury could not convict the defendant of second degree murder without first finding malice in the acts which led to the victim's death. Immediately following his instructions on malice in second degree murder, he instructed the jury on manslaughter. The charge accurately described the law's indulgence with the frailties of human nature when a person kills in a sudden transport of passion or provocation and is thereby guilty of manslaughter. The judge pointed out that the presence of malice distinguished murder from manslaughter. The judge also instructed the jury on the malice which they might infer from the commission of assault and battery by means of a dangerous weapon, i.e., a shod foot. *Commonwealth* v. *McInerney,* 373 Mass. 136, 146-147 (1977).

The defendant misses the mark when he insists (quite correctly) that for a felony-murder conviction there must be a felony independent of the homicide. We accept that principle as consistent with substantially all jurisdictions and authorities which have considered it. See generally W. R. LaFave & A.

W. Scott, Jr., Criminal Law § 71, at 545-561 (1972). R. Perkins, Criminal Law, c. 2, § 1, at 43 (2d ed. 1969). No case has been brought to our attention nor have we found a case in which this court has held that a felony which itself results in the homicide can be the felony required under the felony-murder rule.

We add that in felony-murder the conduct which constitutes the felony must be "separate from the acts of personal violence which constitute a necessary part of the homicide itself. Thus, although rape, arson, robbery and burglary are sufficiently independent of the homicide, . . . aggravated battery toward the deceased will not do for felony murder. . . . Where it is battery with intent to kill or do serious bodily harm, and death results from the battery, the homicide constitutes murder of the intent-to-kill or intent-to-do-serious-bodily-harm types, with no need to resort to felony murder." W. R. LaFave & A. W. Scott, Jr., *supra* § 71, at 559. See *State* v. *Branch,* 244 Or. 97, 100 (1966) ("[C]ourts . . . have held that where the only felony committed [apart from the murder itself] was the assault upon the victim which resulted in the death of the victim, the assault merged with the killing and could not be relied upon by the state as an ingredient of a 'felony murder' ").

The judge's charge does not gainsay this principle. The judge instructed the jury that they may infer malice from the severe beating which the defendant gave the victim and which amounted to assault and battery by means of a dangerous weapon.

The defendant does not claim that the judge's instructions on malice aforethought were erroneous. In essence, the judge told the jurors that "[m]alice aforethought includes any unexcused intent to kill, to do grievous bodily harm, or to do an act creating a plain and strong likelihood that death or grievous harm will follow." *Commonwealth* v. *Huot,* 380 Mass. 403, 408 (1980). "An intention to inflict injury on the victim which is not justified on any lawful ground or palliated by the existence of any mitigating circumstances is malicious within the meaning of the law." *Commonwealth* v. *McGuirk,* 376 Mass. 338, 345 (1978). These instructions correctly permitted the jurors to infer malice from evidence that the defendant beat and kicked

to infer malice from evidence that the defendant beat and kicked the victim, stuffed him into an automobile trunk, ignored his groans, dumped him in a cemetery and left him to die. Such evidence might also be used to prove a charge of assault and battery by means of a dangerous weapon. However, that possibility does not detract from the "over-all impact [of the charge] on the jury," *Commonwealth* v. *Sellon,* 380 Mass. 220, 232 (1980). In his instructions, the judge squarely and repeatedly placed the duty of proving malice aforethought beyond a reasonable doubt on the Commonwealth. At no point did the judge's charge deviate from the requirement that the defendant must have the intent to do serious, grievous bodily harm to the victim. *Commonwealth* v. *Scanlon,* 373 Mass. 11, 18 (1977). *Commonwealth* v. *Hicks,* 356 Mass. 442, 444-445 (1969), and cases cited therein. The charge read as a whole did not relieve the jury of their duty to make a finding of malice aforethought from the defendant's unexcused intent to do grievous bodily harm.

The test of a charge is the impression which it makes as a whole. *Commonwealth* v. *Benders,* 361 Mass. 704, 707 (1972). The present charge read as a whole instructed the jury that for second degree murder the Commonwealth had the burden of proving that the defendant's conduct was actuated by malice and that such conduct caused the victim's death. The record being replete with evidence of malice, there was no need for the jury to consider any artificially transferable malice from the commission of the felony as this species of malice has been treated in cases like *Commonwealth* v. *Moran,* 387 Mass. 644, 650-651 (1982), and *Commonwealth* v. *Matchett,* 386 Mass. 492, 504-508 (1982), and they were not so instructed. We see no reversible error in the charge.

*Judgment affirmed.*