## COMMONWEALTH vs. FRANK M. ROBINSON.

No. 97-P-1534.

Suffolk. January 14, 1999. - December 7, 1999.

Present: JACOBS, SMITH, & SPINA, JJ.[1]

*Homicide. Kidnapping. Felony-Murder Rule. Witness,* Immunity, Corrobora-
tion. *Practice, Criminal,* Venue, Instructions to jury, Immunity from
prosecution, Argument by prosecutor, Verdict, Duplicative convictions.
*Waiver. Malice. Joint Enterprise.*

At the trial of indictments for felony-murder and kidnapping (as the underly-
ing felony), evidence of the restraint used by the defendant to accomplish
the kidnapping of the victim was independent of the acts of violence that
brought about the victim's death, and the judge correctly denied the
defendant's motion for a required finding of not guilty based on an asser-
tion that there was a merger of the offenses. [333-334]

At the trial of indictments, there was sufficient independent evidence to cor-
roborate the testimony of the Commonwealth's immunized witness, and
the judge correctly denied the defendant's motion for a required finding of
not guilty. [334-335]

Venue of a murder trial was properly in Suffolk County upon the prosecutor's
petition under G. L. c. 277, § 57A, and the defendant's failure to have
objected to the allowance of the petition constituted a waiver of any right
to have the trial held in another county; further, the defendant demonstrated
no prejudice from the allowance of the petition. [335-336]

At the trial of a murder indictment, the prosecutor did not improperly vouch
for the credibility of an immunized witness; therefore, there was no error
in the judge's failure to have instructed the jury that the Commonwealth
did not and could not know whether the witness's testimony was true.
[336-338]

At the trial of an indictment for murder in the first degree based on felony-
murder, no view of the evidence would have warranted an instruction to
the jury on involuntary manslaughter. [338-339]

Where three codefendants were tried on murder and kidnapping indictments
under the theory that they were principals and under a theory of joint
venture, the conviction of only one codefendant on the charges did not
require that the verdicts be set aside, where the convictions were not

---

[1]This case was argued before Justices Jacobs, Smith, and Spina. Following
Justice Spina's appointment to the Supreme Judicial Court, Justice Porada was
added to the panel and participated in the decision.

inconsistent with the principal theory and the evidence supported the convictions on the joint venture theory. [339-341]

A conviction for kidnapping was vacated where it was duplicative of a conviction for second degree murder on a theory of felony-murder, with kidnapping as the underlying felony. [341-342]

INDICTMENTS found and returned in the Superior Court Department on July 25, 1995.

The cases were tried before *Robert W. Banks*, J.

*Maxine Sushelsky* for the defendant.

*Stephen D. Fuller*, Assistant District Attorney, for the Commonwealth.

SMITH, J. On July 25, 1995, a Suffolk County grand jury returned indictments charging the defendant, Frank M. Robinson, with murder in the first degree, kidnapping, armed robbery, unlawful possession of a firearm, and conspiracy. On September 10, 1996, the defendant's trial on all the indictments, except conspiracy, commenced in Suffolk County. Keith Fitzpatrick, Eugene Christopher Hayes, and Karla Hayes were tried with him as codefendants. Fitzpatrick was charged with first degree murder and kidnapping; both Eugene Hayes and Karla Hayes were charged with first degree murder, armed robbery, and kidnapping.

At the close of the Commonwealth's case, the judge denied the defendant's motion for a required finding of not guilty on the murder and kidnapping charges and reserved judgment on all the other charges.[2] At the close of all the evidence, the judge entered findings of not guilty on the indictments charging the defendant with armed robbery and unlawful possession of a firearm. He again denied the motion for a required finding of not guilty on the murder and kidnapping charges.[3]

On September 19, 1996, the jury returned verdicts finding the

---

[2]The judge committed error when he reserved judgment on the other charges instead of ruling on the motion. Mass.R.Crim.P. 25(a), 378 Mass. 896 (1979), states that "[i]f a defendant's motion for a required finding of not guilty is made at the close of the Commonwealth's evidence, it shall be ruled upon at that time." See *Commonwealth* v. *Preston*, 393 Mass. 318, 321 n.2 (1984). We do not see any prejudice to the defendant, however, resulting from the judge's error.

[3]At the close of all the evidence, the judge allowed Fitzpatrick's motion for a required finding of not guilty on the murder and kidnapping charges. At the

defendant guilty of murder in the second degree on a theory of felony-murder based on kidnapping and guilty of kidnapping. On appeal, the defendant asserts the following: (1) the judge committed error in denying the motions for required findings of not guilty; (2) the judge's instructions to the jury were flawed; (3) trial counsel was constitutionally ineffective; and (4) the kidnapping conviction is duplicative of the felony-murder conviction.

We summarize the evidence in the light most favorable to the Commonwealth. *Kater* v. *Commonwealth,* 421 Mass. 17, 20 (1995). We note that the bulk of the Commonwealth's evidence came from the testimony of Nancy Medeiros, who testified under a grant of immunity.

Sometime during the afternoon of June 13, 1995, Medeiros visited the defendant and his girlfriend at their home in Stoughton. While there, the defendant informed Medeiros that the victim, Maurice Vance, had telephoned him and told him that he (Vance) had stolen money and drugs from a man in Boston and that there was a "hit" on him. Soon after, the victim arrived at the defendant's home. The four played cards, and during the game the defendant repeatedly joked that he was going to tie the victim to a tree by the neck and kill him.

At about 5:00 or 5:30 P.M., Medeiros went to her grandmother's house for dinner. At approximately 7:30 P.M., Medeiros telephoned the defendant, who asked her if she would drive him to Boston so that he could deliver a package. Medeiros returned to the defendant's home where she found the defendant in the kitchen with Eugene and Karla Hayes. The defendant then directed Medeiros to look out a window located on the porch. She saw a body lying on the ground in the backyard with a rope tying its hands and feet. The head was covered with a pillowcase which had blood seeping through it. Medeiros recognized the body as that of the victim from the boots he had been wearing. She also recognized the rope as one that she had seen earlier in the defendant's home.

same time the judge ruled that, as to Eugene Hayes, the Commonwealth had not submitted sufficient evidence to prove armed robbery and, therefore, the judge submitted that indictment to the jury on the lesser charge of larceny from the person, or larceny. The judge then allowed Karla Hayes's motion for a required finding of not guilty on the armed robbery indictment. On all the remaining charges submitted to the jury against Eugene and Karla Hayes, the jury returned verdicts of not guilty.

The defendant told Medeiros that he had asked the victim to accompany him outside to shoot squirrels with a BB gun. Once in the backyard, the defendant pulled out a gun; the victim fell to his knees and begged for his life. According to the defendant, Karla Hayes put a rope around the victim's neck. Subsequently, the defendant hit the victim with the gun, rendering him unconscious. The defendant thereafter placed a gag into the victim's mouth, tied a pillowcase over his head, and bound his hands and feet in a "hog-tied" fashion. The defendant told Medeiros that he did not believe that the victim was dead and that he planned to deliver him to "Fitzy" (the man in Boston who had ordered the "hit"), so that he, Fitzy, could "finish the job."

The defendant and Eugene Hayes covered the victim's body with a blanket and placed it in the hatchback of Medeiros's car. The defendant, Medeiros, and Karla Hayes then drove to Boston looking for Keith Fitzpatrick. After locating Fitzpatrick, he told the defendant that he would not deal with the matter until it became dark. As Medeiros and Karla Hayes waited outside, Hayes took a small gasoline container from an unidentified person.

Once it became dark, the defendant and Fitzpatrick left in Medeiros's car, leaving Medeiros behind with Karla. About one hour later, the two men returned. Fitzpatrick told Medeiros that "they" had stabbed the victim with a kitchen knife, poured gasoline over him, and set him on fire. The defendant meanwhile had left again in Medeiros's car, but returned a short time later and informed Medeiros that her vehicle had broken down. Medeiros, after noticing that her car had a strong gasoline odor, had it towed to Stoughton.

That evening, at approximately 11:00 P.M., the Boston fire department responded to a report of a fire in a field in Dorchester and, upon arriving, put it out. On June 16, 1995, at about 11:50 A.M., Boston police officers responded to a report that a body had been found in the field.[4] The body was identified as the victim's by its fingerprints. Rope, a bloodstained portion of a pillowcase, and pieces of clothing that contained gasoline

---

[4]The reason for the delay between the time that the fire was put out (June 13, 1995) and the date the body was discovered (June 16, 1995) is that the field where the body was discovered was surrounded by a fence and the firemen who put out the fire did so with a deluge gun from the sidewalk without going into the field. Therefore, the body was not discovered until several days later.

residue were found near the body. Rope fibers and grass samples found at the scene matched those obtained from Medeiros's car.

The medical examiner determined that the victim died from asphyxia. He testified that he arrived at this determination by "exclusion . . . . There were no other causes of death, and the information [he] received from the police was that a pillowcase had been placed over the airway of the [victim]." The medical examiner later testified that either a "gag in someone's mouth" or a "pillowcase over the face" could cause asphyxia.

1. *Denial of motion for required finding of not guilty.* The defendant claims that the judge erred in denying the defendant's motion for a required finding of not guilty for three reasons: (a) the kidnapping was not separate and distinct from the homicide; (b) there was insufficient evidence to corroborate the immunized witness's testimony; and (c) the venue in Suffolk County was improper. We find no error.

a. *Evidence of felony-murder.* The defendant was convicted of second degree felony-murder on the basis that the kidnapping was the underlying felony. The defendant argues that there was insufficient evidence to show that the homicide was separate from the kidnapping. In support of his argument, he points to the evidence that the victim died from asphyxiation caused by the gag, the pillowcase, or the rope, all of which were used to restrain him.

"[F]or a felony-murder conviction there must be a felony independent of the homicide." *Commonwealth* v. *Quigley*, 391 Mass. 461, 465 (1984), cert. denied, 471 U.S. 1115 (1985). Therefore, " 'the conduct which constitutes the felony must be "separate from the acts of personal violence which constitute a necessary part of the homicide itself." ' *Commonwealth* v. *Quigley*, 391 Mass. at 466, quoting from LaFave & Scott, Criminal Law § 71, at 559 (1972)." *Commonwealth* v. *Gruning*, 46 Mass. App. Ct. 842, 847 (1999). See *Commonwealth* v. *Gunter*, 427 Mass. 259, 272 (1998).[5]

---

[5]The purpose behind the rule is to prevent felonious assaults that result in death from automatically becoming first degree murder by virtue of the felony-murder rule; if the felonious assault that resulted in death was "sufficient to support a conviction of murder in the first degree, the distinctions among homicides would be rendered meaningless: all murders in the second degree and manslaughters could be enhanced to murder in the first degree based on the felony-murder theory with assault as the underlying felony." *Commonwealth* v. *Gunter*, 427 Mass. at 272.

The crime of kidnapping requires the Commonwealth to prove that the defendant forcibly or secretly confined or imprisoned another within the Commonwealth against his will. G. L. c. 265, § 26. *Commonwealth* v. *Lent*, 46 Mass. App. Ct. 705, 709-710 (1999). Thus, the essential element of kidnapping is not the level of violence but rather the defendant's forcible or secret confinement or imprisonment of the victim against his will.

Viewing the evidence in the light most favorable to the Commonwealth, the evidence showed that, after the defendant lured the victim into the backyard, he threatened him with a gun as the victim begged for his life. Karla Hayes placed a rope around the victim's neck, and the defendant hit the victim with the gun, rendering him unconscious. At that point, the defendant had forcibly confined the victim against his will. See *Commonwealth* v. *Jackson*, 417 Mass. 830, 844 (1994) (sufficient evidence of kidnapping where "there was evidence that the victim was transported, that he was alive at the time that he was bound, and that the manner in which he was bound would have rendered him incapacitated"). No further restraint was necessary to accomplish the defendant's plan to kidnap the victim.

The medical examiner's opinion that the victim's death resulted from asphyxia caused by either the gag in the mouth or the pillowcase over his head does not dictate that the kidnapping merge with the murder. Those later actions which resulted in the asphyxia, although further means of restraint, were not essential to the kidnapping and were separate and distinct physical acts of violence that ultimately led to the victim's death. Therefore, the restraint used to accomplish the kidnapping was independent of those acts of violence that brought about the homicide.[6]

b. *Corroboration of the immunized witness's testimony.* General Laws c. 233, § 20I, as inserted by St. 1970, c. 408,

---

[6]The defendant also argues that the judge committed error by failing to instruct the jury that, in order to find the defendant guilty of felony-murder, they had to find that the underlying felony (kidnapping) was independent of the murder. However, there was no request for such an instruction.

Moreover, the Supreme Judicial Court Model Jury Instructions on Homicide (August 3, 1999) do not contain such an instruction. Endnote number 8 to those instructions provides that, "the Court has concluded that there is no need to include in the instructions as an element of felony murder the following: — 'The felony must have been independent of the homicide'. . . . In virtually all cases, this is not an issue for the jury; it is an issue of law to be decided by the judge subject, of course, to appellate review."

provides: "No defendant in any criminal proceeding shall be convicted solely on the testimony of, or the evidence produced by, a person granted immunity under the provisions of [§ 20E]." "The purpose of the statute is to require support for the credibility of the immunized witness. That support may come as much in the form of corroboration of evidence of the commission of the crime as it does from proof that the defendant was a participant. Wigmore, Evidence (3d ed.) § 2059, p. 327." *Commonwealth* v. *DeBrosky*, 363 Mass. 718, 730 (1973).

The defendant argues that the judge should have granted his motion for a required finding of not guilty because the Commonwealth failed to produce any evidence corroborating the testimony of Medeiros, the immunized witness. There was no error, however, because there was independent evidence that the victim had been kidnapped and killed as Medeiros had testified.

On June 13, 1995, the day that Fitzpatrick told Medeiros that "they" had burned the victim, the Boston fire department put out a fire in a field. On June 16, a detective found the victim's burned body in the same location as the fire. His hands were bound with rope and a bloodstained piece of fabric that appeared to be part of a pillowcase was found nearby. The fabric had a pattern identical to the sheets and pillowcase that the police seized from the defendant's home. Also, the medical examiner had testified that the victim had died of asphyxiation, further corroborating Medeiros's testimony that a rope had been put around the victim's neck and a pillowcase over his head. Therefore, there was sufficient evidence to corroborate Medeiros's immunized testimony. See *Commonwealth* v. *Jacobs*, 6 Mass. App. Ct. 618, 623 (1978).

c. *Venue in Suffolk County*. The defendant argues that, even though the victim's body was found in Suffolk County, the only inference supported by the evidence is that the victim died in Stoughton (in the defendant's yard), which is in Norfolk County. The defendant argues that the trial should have been held in Norfolk County, not Suffolk County. However, after the victim's body was found in Suffolk County, the defendant was the subject of indictments returned by a Suffolk County grand jury, and he was brought to trial in Suffolk County.

Prior to trial, the prosecutor petitioned for leave to proceed in Suffolk County because there was doubt as to where the

homicide occurred. G. L. c. 277, § 57A.[7] The judge did not hold a hearing and allowed the petition on the prosecutor's representation that it was an open question where the death occurred. The defendant did not object to the allowance of the petition.[8]

A petition brought pursuant to § 57A necessarily implies that the Commonwealth will be unable to satisfy the requirement of proving the exact county in which the death occurred. The purpose of the statute is to prevent criminals from escaping justice through uncertainty concerning the precise location where the crimes occurred. *Commonwealth* v. *Mannos*, 311 Mass. 94, 103 (1942). The statute is concerned with venue and not jurisdiction. *Ibid.* Venue, unlike jurisdiction, may be waived by the parties. *Opinion of the Justices*, 372 Mass. 883, 896-897 (1977). The defendant's failure to object to the allowance of the petition constitutes a waiver of any claim to have the trial held in Norfolk County.

The defendant, on appeal, claims that his trial attorney was ineffective because he did not object to the allowance of the petition. However, not only is there no indication that the trial would necessarily have been held in Norfolk County if the defendant had objected, there is nothing in the record that demonstrates that "trial in Suffolk County . . . rather than in Norfolk County, was in any way prejudicial to the defendant'[s] defences on the merits, or otherwise disadvantageous to [him]." *Commonwealth* v. *Libby*, 358 Mass. 617, 620 n.2 (1971).

2. *The jury instructions.* The defendant argues that the judge committed error (a) in failing to instruct the jury about the im-

---

[7]General Laws c. 277, § 57A, states, "A defendant shall not be discharged for want of jurisdiction if the evidence discloses that the crime with which he is charged was actually committed without the county or the territorial jurisdiction of the court in which he is being tried; provided, that the . . . district attorney petitions to the court before proceeding with the trial for leave to proceed, stating that he is in doubt from the state of the evidence then in his possession as to whether or not the crime was committed within the county or the territorial jurisdiction of the court, and the court after hearing said petition orders the trial to proceed."

The motion mistakenly states that it was brought pursuant to G. L. c. 277, § 57. However, the body of the motion clearly demonstrates that it was brought under G. L. c. 277, § 57A.

[8]The judge should have held a hearing before allowing the petition. See G. L. c. 277, § 57A. The record does not reveal that the defendant was prejudiced by the judge's failure to conduct a hearing.

munized witness's testimony and (b) in failing to instruct on involuntary manslaughter.

a. *The instructions on the immunized witness's testimony.* The judge instructed the jury to consider Medeiros's testimony with greater care than they would the testimony of an ordinary witness because of the immunity agreement. Specifically, the judge instructed the jury to consider especially "whether any promises, rewards, or inducements were made to the witness by the Commonwealth." The judge also told the jury to consider whether Medeiros's testimony had been "affected by [her] personal interest or personal advantage and any prejudice or bias that [she] might have [had] against a defendant." He also instructed the jury to consider, in weighing her testimony, whether she had any expectation that, as a result of her cooperation with the prosecution, she would receive favorable treatment in the future. There was no objection to the judge's instructions.

The defendant now argues that the prosecutor, in his questions to Medeiros and in his closing argument, vouched for the truthfulness of Medeiros's testimony. Therefore, the defendant argues that the judge committed error in not instructing the jury that the Commonwealth did not and could not know whether Medeiros's testimony was true.

"When a prosecution witness testifies pursuant to a plea agreement containing a promise to tell the truth, and the jury are aware of the promise, the judge should warn the jury that the government does not know whether the witness is telling the truth." *Commonwealth* v. *Meuse*, 423 Mass. 831, 832 (1996). Failure so to instruct, by itself, is not reversible error. However, if the prosecutor has vouched for that witness's credibility, "such a failure to instruct is reversible error." *Ibid.*[9]

During Medeiros's cross-examination, defense counsel brought out that Medeiros was testifying under an immunity agreement. On redirect examination, the prosecutor elicited testimony from Medeiros that the agreement required her to tell the truth, and if she did not, she faced the possibility of life

[9]Here, Medeiros did not testify pursuant to a plea agreement but rather under an immunity agreement. The problems that are intrinsic to testimony under a plea agreement also are intrinsic to the testimony of an immunized witness but "with somewhat diminished force." *Commonwealth* v. *Gagliardi*, 29 Mass. App. Ct. 225, 241 (1990). However, "[t]he implication of vouching can nevertheless be present with immunized testimony and should be offset in a degree commensurate with the danger." *Ibid.*

imprisonment. We do not read the brief redirect examination on the agreement to amount to improper vouching by the Commonwealth. See *Commonwealth* v. *Grenier,* 415 Mass. 680, 687 (1993).

"A prosecutor in closing argument may restate the government's agreement with the witness and may argue reasonable inferences from the [immunity] agreement's requirement of truthful testimony." *Commonwealth* v. *Ciampa,* 406 Mass. 257, 265 (1989). Where there is an immunity agreement, "[a] prosecutor's position is a delicate one. The prosecutor must be free to argue that [a witness testifying under an immunity agreement] is credible, but may not explicitly or implicitly vouch to the jury that he or she knows that the witness's testimony is true." *Ibid.* See *Commonwealth* v. *Brousseau,* 421 Mass. 647, 653 (1996). A review of the prosecutor's closing argument shows that he did not cross the line and vouch for Medeiros's credibility. Accordingly, there was no error in the omission of the instruction that the Commonwealth could not and did not know if Medeiros's testimony was true.[10]

b. *Refusal to instruct on involuntary manslaughter.* The defendant claims that the judge committed error when he refused the defendant's request to instruct the jury on the lesser included offense of involuntary manslaughter. Because the defendant objected to the judge's refusal to give the involuntary manslaughter instruction, we review the omission to determine if there was prejudicial error. *Commonwealth* v. *Grenier,* 415 Mass. at 686-687 & n.8. There was no error.

"An instruction on involuntary manslaughter is required where any view of the evidence will permit a finding of manslaughter and not murder." *Commonwealth* v. *Pierce,* 419 Mass. 28, 33 (1994). Here, no view of the evidence warranted an involuntary manslaughter conviction.

"A verdict of involuntary manslaughter is possible only where the defendant caused an unintentional death (1) during the commission of an act amounting to wanton or reckless conduct, or (2) during the commission of a battery." *Commonwealth* v. *Brooks,* 422 Mass. 574, 578 (1996). The defendant claims that his conduct supported only a finding of wanton and reckless conduct.

---

[10]In view of our ruling, we reject the defendant's claim that his trial counsel was ineffective for not requesting the instruction.

The jury convicted the defendant of second degree felony-murder based on the underlying felony of kidnapping. "Where the felony-murder rule applies, generally the defendant is not entitled to an instruction on manslaughter." *Commonwealth* v. *Evans*, 390 Mass. 144, 151 (1983). *Commonwealth* v. *Selby*, 426 Mass. 168, 172 (1997). Because the jury found the defendant guilty of both second degree felony-murder and the underlying felony of kidnapping, the refusal to give the requested instruction on involuntary manslaughter was not in error.

At the time that the jury were instructed on alternative theories of second degree murder, an instruction on involuntary manslaughter as a lesser included offense of "straight" (not felony-murder) second degree murder would also not have been warranted by the evidence. "Malice is what distinguishes murder from manslaughter." *Commonwealth* v. *Vizcarrondo*, 427 Mass. 392, 396 (1998). "The difference between the elements of the third prong of malice and wanton and reckless conduct amounting to involuntary manslaughter lies in the degree of risk of physical harm that a reasonable person would recognize was created by particular conduct, based on what the defendant knew. The risk for the purposes of the third prong of malice is that there was a plain and strong likelihood of death. . . . The risk that will satisfy the standard for wilful and wanton conduct amounting to involuntary manslaughter 'involves a high degree of likelihood that substantial harm will result to another.' " *Commonwealth* v. *Vizcarrondo, supra,* quoting from *Commonwealth* v. *Sires*, 413 Mass. 292, 303-304 n.14 (1992).

There was evidence that after the defendant hit the victim, rendering him unconscious, a rope was placed around his neck, he was gagged, and a pillowcase was placed over his head. The risk of harm associated with those acts could only lead to a determination of third prong malice. See *Commonwealth* v. *Scott*, 408 Mass. 811, 822-823 (1990) (foreseeable that gag would cause death by asphyxia). The judge did not err in denying the defendant's request for an involuntary manslaughter instruction.[11]

3. *Discrepancy among the verdicts.* The defendant claims

[11]The defendant argues that *Commonwealth* v. *Plunkett*, 422 Mass. 634, 639 (1996), supports his claim that an involuntary manslaughter instruction was

that, because the same jury at the same trial found him guilty of second degree felony-murder and kidnapping and also found the codefendants not guilty, he was, in effect, convicted for his participation in a joint venture in which no one else was involved. He argues, therefore, that the guilty verdicts were impossible at law.[12]

In support of his argument, the defendant points to the principle that "one cannot commit a conspiracy alone." *Commonwealth* v. *Cerveny*, 387 Mass. 280, 285 (1982). By analogy, he asserts that one cannot be found to have participated in a joint venture with himself. The argument, however, overlooks some significant factors.

The defendant and his codefendants were tried on the murder and kidnapping indictments under two separate theories: they were principals in committing the crimes, or they were engaged in a joint venture to commit the crimes. The verdicts were not inconsistent under the principal theory. The jury could have believed Medeiros's testimony about the defendant's role in committing the two crimes and have disbelieved her regarding the codefendants' various roles. Further, the jury could have found that there was corroborating evidence as to this defendant but not as to the codefendants.

Because the verdict was a general one in regard to the two theories, we do not know for certain whether the defendant was convicted on the principal or the joint venture theory. To settle the defendant's claim, we will assume that the jury concluded that the defendant participated in a joint venture in committing second degree felony-murder and kidnapping.

There is a distinction between verdicts that are impossible at

---

warranted.

In *Plunkett*, the jury found the defendant guilty of first degree murder. The Commonwealth tried the matter on two separate theories, deliberate premeditation and felony-murder. The jury were not asked to specify the theory on which they returned their guilty verdict. Because the evidence was insufficient to warrant a guilty verdict on the theory of deliberate premeditation and it was not conclusive that the jury necessarily and unavoidably found the defendant guilty of felony-murder, the court ordered a new trial.

Here, the jury specifically found the defendant guilty of second degree felony-murder based on the kidnapping. Therefore, *Commonwealth* v. *Plunkett, supra,* is not relevant.

[12]The defendant argues that his trial counsel was ineffective in not moving for a required finding of not guilty after the verdicts were returned on the basis that they were impossible at law. Because we find no error, we reject the defendant's claim.

law and those verdicts that are merely inconsistent. *Commonwealth* v. *Sherry*, 386 Mass. 682, 698 (1982). Verdicts that are impossible at law are, for example, convictions for larceny of stock and larceny of money proceeds from the same stock, see *Commonwealth* v. *Carson*, 349 Mass. 430, 434-436 (1965), or convictions for receiving stolen property and larceny of the same property. *Commonwealth* v. *Nascimento*, 421 Mass. 677, 683 (1996).

Here there is, at most, an internal inconsistency, which is not fatal to the convictions as long as the guilty verdicts are supported by the evidence. *Commonwealth* v. *Coleman*, 30 Mass. App. Ct. 229, 235 (1991). "[M]ere inconsistency of verdicts does not render a guilty verdict erroneous." *Ibid.* Further, where the evidence against one defendant "appears to be more substantial and persuasive" than the evidence against the other defendants, the joinder of several defendants at trial for the same crime does not require that either all or none of the defendants be found guilty. *Commonwealth* v. *Connearney*, 359 Mass. 200, 202-203 (1971). Here, the evidence against the defendant was considerably stronger and more persuasive than it was with regard to the codefendants.[13]

The jury specifically found the defendant guilty of second degree felony-murder on the basis of the kidnapping. Accordingly, we are not faced with a situation in which the defendant's guilty verdicts must be set aside because they are "supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." *Yates* v. *United States*, 354 U.S. 298, 312 (1957).[14]

4. *Kidnapping conviction.* The Commonwealth concedes that the defendant's conviction for kidnapping must be vacated

---

[13]The jury were also instructed that the immunized witness's testimony had to be corroborated for them to convict. The jury may have found the necessary corroboration as to this defendant, but not as to the codefendants. Specifically, the pattern on the piece of fabric found with the victim's body matched the pattern of the pillowcase and sheets that were seized from the defendant's home. There was no such corroborating physical evidence that tied the victim's murder so directly to the codefendants. If it was this evidentiary discrepancy that was determinative for the jury, the verdicts could not even be appropriately labeled as inconsistent.

[14]The holding in *Yates* was illuminated and confined in *Griffin* v. *United States*, 502 U.S. 46, 54-56 (1991). The Supreme Judicial Court specifically declined to adopt the rule articulated in *Griffin. Commonwealth* v. *Plunkett, supra* at 639.

because it is duplicative of his conviction for second degree murder on a theory of felony-murder. *Commonwealth* v. *Anderson*, 425 Mass. 685, 692 (1997). *Commonwealth* v. *Hoilett*, 430 Mass. 369, 376 (1999).

The defendant's judgment of conviction of murder in the second degree is affirmed. The judgment of conviction of kidnapping and the sentence imposed thereon are vacated, and the verdict is set aside on that charge.

*So ordered.*