# IN THE SUPREME COURT OF IOWA

No. 07–0309

Filed September 17, 2010

**STATE OF IOWA,**

Appellee,

vs.

**RON JAREL MILLBROOK,**

Appellant.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Mary E. Howes, Judge.

Defendant seeks further review of court of appeals' decision affirming his conviction of first-degree murder, claiming the district court erroneously instructed the jury that it could convict the defendant under the felony-murder rule. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Lauren M. Phelps, Bettendorf, for appellant.

Thomas J. Miller, Attorney General, Bridget A. Chambers, Assistant Attorney General, Michael J. Walton, County Attorney, and Jerald L. Feuerbach, Assistant County Attorney, for appellee.

**TERNUS, Chief Justice.**

The defendant, Ron Millbrook, appeals his conviction of first-degree murder, contending the trial court erred when it submitted a felony-murder instruction to the jury. Relying on the merger doctrine adopted in *State v. Heemstra*, 721 N.W.2d 549 (Iowa 2006), Millbrook claims there was not sufficient evidence of his commission of a felony independent of the act resulting in the victim's death. His appeal was transferred to the court of appeals, where his conviction was affirmed. Upon our further review of his claim of error, we affirm.

## I. Background Facts and Proceedings.

On August 19, 2006, at approximately 10:30 p.m., a drive-by shooting in Davenport, Iowa, claimed the life of an innocent bystander, nineteen-year-old Vincelina Howard. Howard, along with twenty to thirty other persons, was attending an outdoor party at her grandmother's house when a minivan, driving by slowly, opened fire on the partygoers.[1] Howard received a fatal wound to her neck and died a short time later at a nearby hospital. The defendant subsequently confessed that he was one of the occupants of the van and had participated in the shooting.

Evidence presented at trial, including the defendant's full account of the shooting, provided the following details of these events. Millbrook and three other individuals, Don White, Jr., Terrell Lobley, and Rasheem Bogan, were all residents of Rock Island, Illinois, a community located across the Mississippi River from Davenport. In the early evening of August 19, 2006, Millbrook attended a memorial walk in honor of a friend who had been killed in a drive-by shooting four months earlier. After Millbrook returned home from the memorial walk, he, Bogan, Lobley, and White decided to ride

---

[1]We will refer to the victim's grandmother's house as the Howard residence.

around before going to a party. They used a minivan that the defendant had borrowed from another acquaintance. Bogan drove the vehicle; Lobley was in the front passenger seat; White was seated behind the driver in the middle bench seat; Millbrook sat next to White. All four individuals were armed.

At some point during the drive, a decision was made to go to the Iowa side of the river and look for Stevie West and another man. It was believed these two persons had been involved in a shooting at a Rock Island club the evening before. As Millbrook and his friends crossed the bridge into Davenport, they spotted West traveling in a vehicle ahead of them. They followed West's vehicle to the vicinity of a Super America gas station next door to the Howard house. Driving by the residence, they noticed the party going on in the yard.

Bogan circled around the block and drove slowly down the alley adjacent to the Howard residence. As they proceeded down the alley, White shouted, "There they go." At White's urging, Millbrook then opened the minivan's sliding door, and all four of the men in the van began firing their guns out of the passenger side of the vehicle in the direction of the partygoers. Millbrook's gun was fully loaded with seven rounds of ammunition. He fired the weapon until it was empty. When the minivan reached the end of the alley, the men stopped shooting, and Bogan made a left turn onto the street. As they turned, Bogan thought he saw West at the gas station, and he fired shots out of the driver's side of the vehicle. Two shots hit a bystander's car that was being fueled at the station.

As the shooters escaped from the scene, the minivan hit a bump in the road and became disabled. The men then fled on foot, their exit from the vehicle being captured on a security tape positioned in the area. Although all four men took their guns with them, Millbrook left his cell phone in the vehicle.

At the scene of the shooting, partygoers had gotten down on the ground when the shooting began. Witnesses testified there were a lot of shots, a short break in the shooting, and then some more shots. When the shooting stopped, partygoers realized Howard had been shot and was unresponsive. Efforts to revive her were unsuccessful, and she died at the hospital a short time later.

A forensic pathologist who examined the victim's body testified that a single bullet entered her right shoulder, exited at the top of her shoulder, and re-entered the right side of her neck, hitting the victim's carotid artery. The bullet then entered the victim's mouth cavity. Although there was not a second exit wound, the bullet was not found in the victim's mouth. The forensic pathologist testified the victim probably coughed the bullet out. The cause of death was hemorrhagic shock caused by the neck injuries.

Investigators later estimated, based on shell casings and bullets found at the scene and in the minivan, that approximately twenty shots were fired in the vicinity of the Howard residence. These shots came from four different guns: a Rossi .38 caliber revolver, a Springfield .45 caliber pistol, a 9 mm. revolver, and a Colt Combat Commander .45 caliber semiautomatic pistol. The defendant admitted he used the Springfield .45 caliber pistol. This gun and the Rossi .38 caliber revolver were later found in the trunk of a car parked in front of the defendant's house. Fingerprints on the Springfield pistol also linked the defendant to that weapon.

Only two bullets were found in the Howard yard itself; both had been fired from Millbrook's gun. One of these bullets was found in a pool of the victim's blood.

The State charged the defendant, White, Lobley, and Bogan with various offenses arising from Howard's murder. After several amendments to the trial information, Millbrook was eventually charged with first-degree

murder and intimidation with a dangerous weapon with intent. *See* Iowa Code §§ 707.1, 707.2, 708.6 (2005).

At Millbrook's subsequent trial, the district court submitted a felony-murder instruction to the jury over defense counsel's objection. Under this instruction, the jury could find the defendant guilty of first-degree murder if, among other elements, it found "[t]he defendant or a person he aided and abetted . . . was participating in the offense of Intimidation with a Dangerous Weapon With Intent" at the time of Howard's murder. The defendant objected to this instruction on the ground that it was improper in light of this court's decision in *Heemstra*. In *Heemstra*, we held conduct that constitutes the felony for purposes of the felony-murder rule must be separate and distinct from the act causing the victim's death. 721 N.W.2d at 554, 558–59.

The jury convicted the defendant of first-degree murder and intimidation with a dangerous weapon with intent. We transferred Millbrook's subsequent appeal to the court of appeals. That court affirmed the defendant's convictions. We granted further review to address the issue of whether the lower courts erred in their application of the felony-murder rule. The court of appeals' opinion stands as the final decision with respect to the other issues raised on appeal. *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009).

## II. Scope of Review.

We review challenges to jury instructions for the correction of errors of law. *State v. Spates*, 779 N.W.2d 770, 775 (Iowa 2010). Here, the defendant claims the evidence does not support a finding that there was a felonious act independent of the conduct that resulted in Howard's death. In determining whether there is sufficient evidence to support submission of the felony-

murder instruction to the jury, we view the evidence in a light most favorable to the State. *State v. Lawler*, 571 N.W.2d 486, 490–91 (Iowa 1997).

### III. *Heemstra* Holding.

We begin our consideration of the defendant's challenge to the court's submission of the felony-murder alternative of first-degree murder with a review of the *Heemstra* case. In *Heemstra*, the defendant and the victim were engaged in an argument when the defendant retrieved a rifle from his vehicle and shot the rifle once, striking and killing the victim. 721 N.W.2d at 551. In Heemstra's later trial for murder, the trial court instructed the jury on two alternatives for first-degree murder: (1) premeditated murder and (2) felony murder. *Id.* at 552. To convict the defendant, the jury was required to find either that "[t]he defendant acted willfully, deliberately, premeditatedly, and with specific intent to kill" the victim or that the defendant was participating in the felony of willful injury. *Id.* at 552–53. The jury convicted the defendant under a general verdict, and Heemstra appealed. *Id.* at 551.

On appeal, this court concluded the trial court had erred in submitting the felony-murder alternative of first-degree murder. *Id.* at 558–59. We held the predicate felony for felony murder must be independent of the assault that causes the victim's death. *Id.* at 558. We relied, in part, on the following explanation for this rule given by the New York Court of Appeals:

> "[I]t is not enough to show that the homicide was felonious, or that there was a felonious assault which culminated in homicide. Such a holding would mean that every homicide, not justifiable or excusable, would occur in the commission of a felony, with the result that intent to kill and deliberation and premeditation would never be essential. The felony that eliminates the quality of the intent must be one that is independent of the homicide and of the assault merged therein, as, e.g., robbery or larceny or burglary or rape."

*Id.* (quoting *People v. Moran*, 158 N.E. 35, 36 (N.Y. 1927) (citations omitted)); *accord Commonwealth v. Quigley*, 462 N.E.2d 92, 95 (Mass. 1984) ("[I]n felony-murder the conduct which constitutes the felony must be 'separate from the acts of personal violence which constitute a necessary part of the homicide itself.'" (quoting Wayne R. LaFave & Austin W. Scott, Jr., *Criminal Law* § 71, at 559 (1972)), *abrogation on other grounds recognized by Commonwealth v. Azar*, 742 N.E.2d 1083, 1086 (Mass. App. Ct. 2001); *State v. Branch*, 415 P.2d 766, 767 (Or. 1966) ("[C]ourts . . . have held that where the only felony committed (apart from the murder itself) was the assault upon the victim which resulted in the death of the victim, the assault merged with the killing and could not be relied upon by the state as an ingredient of a 'felony murder.'"). Because the defendant's shooting of the victim in *Heemstra* caused the victim's death *and* was the act constituting the predicate felony of willful injury, the predicate felony was not independent of the assault resulting in death. Therefore, we held, the defendant's participation in the felony of willful injury could not serve as the basis for the defendant's conviction of felony murder. *Heemstra*, 721 N.W.2d at 554, 558–59.

**IV. Discussion.**

**A. Instructions.** Millbrook claims application of the principles announced in *Heemstra* warrants a reversal of his conviction of first-degree murder. In this case, the instruction used by the court to submit first-degree murder gave the jury two alternatives for the intent element: premeditated murder and felony murder. To convict, the jury was required to find that:

> The defendant or a person he aided and abetted either:
>     (a) acted willfully, deliberately, premeditatedly and with a specific intent to kill Vincelina Howard; or

(b) was participating in the offense of Intimidation with a Dangerous Weapon With Intent.

The jury was also instructed on the charge of intimidation with a dangerous weapon with intent:

> Under Count Two, in order for the Defendant, Ron Millbrook, to be found guilty of the offense of Intimidation with A Dangerous Weapon with Intent the State must prove all of the following elements:
>
> 1. On or about August 19, 2006, the defendant or a person he aided and abetted, shot a pistol, revolver or other firearm within an assembly of people.
>
> 2. A pistol, revolver or other firearm is a dangerous weapon, as explained in Instruction No. 12.
>
> 3. A person or persons actually experienced fear of serious injury and their fear was reasonable under the existing circumstances.
>
> 4. The defendant or a person he aided and abetted shot the pistol, revolver or other firearm with the specific intent to injure or cause fear or anger in a person or persons.

**B. Parties' Arguments.** The defendant contends his act of intimidation with a dangerous weapon with intent is a felonious assault that merges with murder and, therefore, cannot be the basis for a felony-murder charge. The State asserts that intimidation with a dangerous weapon with intent is not a lesser-included offense of first-degree murder, and therefore, no merger for purposes of the felony-murder rule occurs. Alternatively, the State argues that, even if the intimidation offense merges with the murder, here, unlike in *Heemstra*, there were separate acts supporting the charges of felony murder and intimidation with a dangerous weapon.

**C. Merger of Intimidation with a Dangerous Weapon and Murder.** This court's holding in *Heemstra* was clearly stated: "We now hold that, if the act causing willful injury is the same act that causes the victim's death, the former is merged into the murder and therefore cannot serve as the predicate felony for felony-murder purposes." *Heemstra*, 721 N.W.2d at 558. Our application of the principle of merger turned on whether the act

constituting the predicate felony was independent of the act causing death. Merger did not depend on whether willful injury was a lesser-included offense of murder. Therefore, the fact that intimidation with a dangerous weapon is not a lesser-included offense of first-degree murder does not preclude application of the merger doctrine enunciated in *Heemstra.*

**D. Existence of Independent Act.** Our next step in considering the defendant's claim of error is to examine the record to determine whether the act of intimidation is distinct from the murderous assault, as he contends. The jury was instructed that, to find the defendant guilty of intimidation with a dangerous weapon with intent, it must find the defendant or a person he aided and abetted "shot a pistol, revolver or other firearm within an assembly of people." If the shot constituting this offense was also the shot that struck the victim, the felonious acts would merge and the act of intimidation with a dangerous weapon could not serve as the predicate felony for felony murder. Therefore, we must decide whether there were separate, independent acts supporting the charges of felony murder and intimidation with a dangerous weapon.

The defendant claims the seven shots fired by him constitute one act of intimidation, as they were fired one after the other with no break in the shooting. *Cf. State v. Newman,* 326 N.W.2d 788, 793 (Iowa 1982) (holding conviction of sexual abuse merged with kidnapping conviction even though defendant committed two acts of sexual abuse because "the matter was tried and submitted to the jury as one continuing event"). He further reasons that because the evidence showed that one of these shots caused Howard's fatal injury, the acts of intimidation merge with the murderous assault and cannot provide a basis to support a finding of felony murder. The State contends any of the nonfatal shots could serve as the basis for charging the

defendant with intimidation with a dangerous weapon; only the fatal shot would merge into the murder.

After reviewing the record in this case in a light most favorable to the jury's verdict, we conclude the defendant's own testimony supports a finding there was a separate, independent act constituting intimidation with a dangerous weapon that occurred prior to the assault that resulted in the victim's death. Millbrook testified at trial that, upon instructions from White, he—Millbrook—opened the sliding door. White then reached across Millbrook and began shooting. The defendant further testified that after White and the others started shooting, he began to fire his weapon because he "didn't want to feel like a punk."

Although Millbrook also testified that he did not know the others were going to start shooting when he opened the sliding door and that he shot his gun in the air, there was abundant evidence that contradicted his testimony. All four men were armed with fully loaded weapons. There had been an incident the night before involving West that had upset Bogan, the driver of the minivan. It appeared Bogan had followed West to the vicinity of the party. White shouted "There they go" just before the shooting started. Two bullets fired from the defendant's gun were found in the Howard yard, including one in a pool of the victim's blood. The jury was free to disbelieve the defendant's self-serving statements that he was surprised by the shooting and fired his weapon toward the sky.

Evidence that Millbrook enabled White's initial shot toward the crowd by opening the sliding door supports a finding that the defendant aided and abetted White's commission of intimidation with a dangerous weapon with intent. Only after his participation in this predicate felony had commenced did Millbrook himself fire his gun, an independent assault that caused the victim's death.

This case is similar to the Massachusetts case of *Commonwealth v. Gunter*, 692 N.E.2d 515, 524–27 (Mass. 1998), in which Massachusetts' highest court applied the rule that conduct which constitutes the predicate felony must be independent of the act of violence causing death in order to support a finding of felony murder. In that case, the defendant and other individuals drove to an apartment to find three men who had earlier stolen drugs from the defendant and his companions. *Gunter*, 692 N.E.2d at 518–19. While the defendant waited in the car, his cohorts, including one Selby, entered the apartment, brandishing weapons. *Id.* at 519. After holding the occupants at gunpoint while they unsuccessfully searched the apartment for the thieves, the defendant's companions left. *Id.* As the door was closing behind them, Selby pushed the door back open and fatally shot one of the apartment occupants. *Id.* The defendant was charged with felony murder, with armed assault in a dwelling with intent to commit a felony serving as the predicate felony, illegal possession of a firearm, and armed assault in a dwelling with intent to commit a felony. *Id.* at 518. His culpability was as a joint venturer, based on his role in transporting his companions to and from the murder scene. *Id.* Upon his conviction of the charged offenses, the defendant appealed. *Id.*

On appeal, the Massachusetts court considered whether the predicate felony was sufficiently independent of the murder itself to support the felony-murder conviction. *Id.* at 524–25. The court concluded the commonwealth had proved more than the assault on the murder victim; it also established the prior, independent assault on all the apartment occupants when the defendant's cohorts entered the apartment and held the occupants at gunpoint while they searched the premises. *Id.* at 526. The court held the prior assault on the apartment occupants was sufficiently independent of

Selby's later shooting of the victim such that it could serve as the predicate felony for the defendant's felony-murder conviction. *Id.* at 526–27.

Similarly, here, the record shows Millbrook participated in the crime of intimidation with a dangerous weapon with intent prior to discharging his own weapon and causing Howard's death. We think Millbrook's aiding and abetting of White's commission of intimidation with a dangerous weapon with intent is sufficiently independent of Millbrook's firing of his gun into the crowd so as to support his conviction of felony murder.[2]

Under these circumstances, it is unnecessary for us to determine whether the seven shots fired by Millbrook constitute one act of intimidation. Moreover, because Millbrook's firing of his gun need not serve as the predicate felony, the State's failure to prove that Howard was hit by a shot subsequent to the first shot that arguably constituted intimidation is not fatal to the defendant's felony-murder conviction. *Cf. Nay v. State*, 167 P.3d 430, 431–35 (Nev. 2007) (" '[I]n order for the felony-murder doctrine to be invoked, the actor must intend to commit the underlying felony at the time the killing occurs; there is no felony-murder where the felony occurs as an afterthought following the killing.' " (quoting *State v. Buggs*, 995 S.W.2d 102, 107 (Tenn. 1999)).

**V. Disposition.**

Having found no error in the trial court's submission of the felony–murder charge, we affirm the defendant's conviction.

---

[2]We note the district court's instruction on the felony-murder charge did not distinguish between the various shots constituting intimidation with a dangerous weapon with respect to which ones could serve as the predicate felony for felony murder. *See Commonwealth v. Kilburn*, 780 N.E.2d 1237, 1241, 1243 (Mass. 2003) (noting "judge did not distinguish between the two possible [assaults] when he charged the jury on felony-murder," but concluding "the judge's error had no material impact on the outcome of the trial"). The defendant did not object to the court's instruction on this ground, and therefore, we do not consider whether this omission was reversible error.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**