# IN THE COURT OF APPEALS OF IOWA

No. 22-0948
Filed November 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**ADRIANA BERNICE HERRERA PAEZ,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Marshall County, Kim M. Riley,

District Associate Judge.


        A defendant appeals her convictions for child endangerment, possession of

controlled substance, and possession of drug paraphernalia.  **AFFIRMED.**


        Daniel M. Northfield, Urbandale, for appellant.

        Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney

General, for appellee.


        Considered by Ahlers, P.J., Badding, J., and Scott, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2023).

**BADDING, Judge.**

Adrianna Herrera Paez, a mother of two young children, appeals her convictions for possession of methamphetamine, possession of drug paraphernalia, and two counts of child endangerment. In a skeleton brief,[1] Paez challenges the sufficiency of the evidence supporting the jury's verdicts, raising the same argument for each—she did not know there was methamphetamine or drug paraphernalia in the hotel room she lived in with the children and their father.

Our review of this claim is for correction of errors at law. *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022). In evaluating the sufficiency of the evidence, we look at the evidence in the light most favorable to the State and make all inferences that can be fairly drawn in favor of the verdicts. *Id.* Paez's challenge fails under this standard.

On December 29, 2020, at around 10:25 a.m., police officers went to a hotel on a warrant check for Manuel Rodriguez—Paez's boyfriend and the father of her children. They were directed to room 168 and knocked on the door. A very young child answered, throwing the door open pretty wide. Inside the room, the officers saw a woman on the bed farthest from door. The officer who knocked on the door

---

[1] While Paez's brief has the basic framework required by our rules of appellate procedure, it's missing the meat. The routing statement does not reference the applicable criteria in Iowa Rule of Appellate Procedure 6.1101, the statement of the case does not mention the crimes for which Paez was convicted or the sentence imposed, and the statement of facts is a five-sentence recitation of the case's procedural history. *See* Iowa R. App. P. 6.903(2)(d), (e), (f). "We do not mention the transgressions out of a fit of crankiness," because "[r]ule infractions are not a trivial matter." *State v. Lange*, 831 N.W.2d 844, 847 (Iowa Ct. App. 2013). They can, as the State requests here, "lead to summary disposition of the appeal." *Id.* at 847. Despite the shortcomings of Paez's brief, we decline that request and address her claims because doing so does not require us to assume a partisan role. *Id.* But we caution against this bare-bones approach.

started saying, "Police department.  Police department," trying to rouse that adult.  Getting no response, the officer stepped into the room because she was concerned the "person on the bed may be deceased or desperately in need of medical attention."

The room was a mess, with toys, clothes, slices of bread, and open yogurt containers scattered throughout, and it smelled like spoiled food.  As the officer went into the room, she could see the bathroom door was open.  On the counter—strewn among makeup, hairspray, and other toiletries—the officer saw two "bong-type pipes" that she knew from her training and experience "are utilized for illicit drugs."  Once the officer got further into the room, she saw another young child sitting on the second bed in the room.

Turning her attention to the woman on the first bed, who was partially covered by a comforter, the officer kept repeating, "Police department.  Are you okay?"  When the officer was a couple of feet away, the woman started to wake up, startling the officer who thought she was dead.  The woman had a black eye, a tissue in one nostril—"similar to what a person would do to stop a nose bleed," and open sores on her face.  The officer asked for her name, and the woman told her it was Victoria Ruiz.  But when another officer called that name into dispatch, they learned it was an alias Paez used.  Upon further questioning, Paez told the officer her children's names and ages.  The little boy who answered the door was three years old, and the toddler on the bed was one year old.  Once Paez got out of bed, the officer could see that she had been laying on top of a "small plastic bag tied off containing a small amount of like a white powdery, white crystal powder."  The substance inside the baggie was later identified as methamphetamine.

After obtaining a search warrant for the room, law enforcement found eight or nine glass pipes,[2] including the two on the bathroom counter; a second baggie of methamphetamine inside a manicure case that was in a green gym bag; and a small scale. The pipes and scale had what officers believed to be methamphetamine residue on them. Several of the pipes and the scale were found inside purses hanging in the hotel room's open closet.

At Paez's jury trial in March 2022, Rodriguez testified that the methamphetamine, pipes, and scale were his, even though he was not in the hotel room when the police came in. He explained that he, Paez, and their two children had been living at the hotel where he did maintenance work. Rodriguez testified that in December 2020, he was using methamphetamine multiple times a week. Although he stored the drugs and paraphernalia in the hotel room, Rodriguez said that he didn't use them there. He was worried that Paez would leave him if she knew about the drugs, so Rodriguez testified that he kept everything hidden from her. But on cross-examination, Rodriguez admitted that after the first day of trial, Paez called him from jail, told him some of the details about where the drugs and paraphernalia had been found, and instructed him "to say that she didn't know anything about what was found because nothing was where she was or with the kids."

Keeping with that story, Paez testified that she did not know there were drugs or paraphernalia in the room. If she had known, Paez asserted, she would have "gotten [the children] out of there" because their safety was at risk. To explain

---

[2] The crime scene technician testified that she was not sure whether two glass pieces recovered at the scene were separate pipes or if they went together.

the baggie of methamphetamine in the bed, Paez testified that she was actually standing up and eating yogurt when the officer came into the room.  As for the pipes on the bathroom counter, Paez claimed the door was always closed.  And she denied using purses, insisting the ones in the room were not hers.  On cross-examination, Paez was asked about a phone call she made to another man from jail during the three-day jury trial.  The prosecutor questioned Paez, "You told [that man] if you're out there and you run into [Rodriguez], you don't know me.  He will definitely change his mind.  That would really suck at this point.  Did you tell [him] that?"  Paez responded, "I did not say that."  On rebuttal, the State played that recorded phone call for the jury, during which Paez could be heard making those statements.

Paez's insufficiency claims focus on the testimony that she and Rodriguez gave to the exclusion of other evidence presented by the State.  But the jury is "free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive."  *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).  "In fact, the very function of the jury is to sort out the evidence and 'place credibility where it belongs.'"  *Id.* (citation omitted).  We conclude the jury could rationally choose to disbelieve the self-serving testimony of Paez and Rodriguez that she did not know there was methamphetamine or drug paraphernalia in the room.  *See State v. Millbrook*, 788 N.W.2d 647, 653 (Iowa 2010); *see also State v. Jones*, 967 N.W.2d 336, 343 (Iowa 2021) ("While the defendant has an alternative explanation for the evidence, the jury was not required to accept the defendant's version of the events." (cleaned up) (citation omitted)).

Long story short, Paez was found unresponsive on a bed in a hotel room with two young children. While Paez denied using drugs, an officer who had investigated hundreds of drug cases over the course of her twenty-four-year career, testified that Paez's appearance and condition when they entered the room was "consistent with the fact that she had used." Indeed, Paez was lying on top of a baggie of methamphetamine in the bed, and two glass "bong-type pipes" were on the bathroom counter with her makeup and toiletries. *See State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014) ("[A]n individual has actual possession when the contraband is found on his or her person *or* when substantial evidence supports a finding it was on his or her person 'at one time.'" (citation omitted)); *see also State v. Reed*, 875 N.W.2d 693, 706 (Iowa 2016) ("Constructive possession exists when the evidence shows the defendant 'has knowledge of the presence of the controlled substance and has the authority or right to maintain control of it.'" (citation omitted)). Other pipes were found in purses throughout the room and more methamphetamine was found in a manicure case. *See Thomas*, 847 N.W.2d at 443 (allowing "possession of contraband to be inferred based on the location of the contraband and other circumstances"). Paez gave the officers a false name, and she instructed the children's father to take the blame for the drugs and paraphernalia. *See id.* at 445 (considering that defendant gave police a false name when caught in determining the sufficiency of the evidence); *see also State v. Wilson*, 878 N.W.2d 203, 211–12, 212 n.3 (Iowa 2016) (discussing acts that may "constitute circumstantial evidence of consciousness of guilt").

Viewing this evidence in the light most favorable to the State, including all reasonable inferences that may fairly be drawn from it, we find substantial

evidence that Paez knew there were drugs and paraphernalia in the hotel room. *See State v. Davis*, No. 18-1487, 2020 WL 1310271, at *3 (Iowa Ct. App. Mar. 18, 2020) ("Knowledge may be inferred from circumstances surrounding the action."). Because that is the extent of Paez's argument on appeal, we affirm her convictions.

**AFFIRMED.**